UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>SHELLI RENEE JOYE and TERESA M. JOYE, aka MICHAEL JOYE, MARIA TERESA JOYE & MARIA MENDOZA,<br><br>    Debtors,<br>_____<br><br>STATE OF CALIFORNIA FRANCHISE TAX BOARD and SELVI STANISLAUS, Executive Officer of State of California Franchise Tax Board,<br><br>    Defendants and Appellants,<br><br>        v.<br><br>SHELLI RENEE JOYE and TERESA M. JOYE, aka MICHAEL JOYE, MARIA TERESA JOYE & MARIA MENDOZA,<br><br>    Plaintiffs and Appellees.<br>_____ | No. C 06-2415 SC<br><br>ORDER GRANTING APPEAL |

**I.   INTRODUCTION**

Defendants and Appellants State of California Franchise Tax Board and Selvi Stanislaus ("FTB" or "Appellants") appeal an order of the Bankruptcy Court granting summary judgment in favor of Plaintiffs and Appellees Shelli Renee Joye and Teresa Joye ("Joyes" or "Debtors") on the Joyes' Adversary Complaint to Determine Dischargeability, etc. against the FTB.  For the

following reasons, the Court hereby GRANTS the appeal, REVERSES the Bankruptcy Court's ruling, and ENTERS an order of summary judgment in favor of the FTB.

## II. BACKGROUND

On March 17, 2001, the Joyes filed their Chapter 13 bankruptcy petition ("Petition"). See Excerpts of Record on Appeal ("ER") at 84-87. The petition scheduled the FTB as a priority debtor in the estimated amount of $10,000. See ER at 86. Within a week, the Bankruptcy Court sent the FTB an official notice of the filing. See ER at 89. The notice informed the FTB of an April 19, 2001 meeting of creditors, and listed September 3, 2001 as the bar date for filing governmental claims. Id.

On April 15, 2001, the Joyes requested a six month extension for filing their California State tax return for the 2000 tax year. ER at 20. California automatically grants taxpayers a six month extension, thus the due date for filing was moved to October 15, 2001. See id.; ER at 93.

It does not appear that the FTB attended the April 19, 2001 meeting of creditors or filed any objection to the Joyes' Chapter 13 plan.

On May 18, 2001, the Bankruptcy Court confirmed the Joyes' Chapter 13 Plan. See ER at 91.

The FTB did not file a proof of claim in the Joyes' Chapter 13 case. See ER at 9.

On October 15, 2001, approximately one and a half months after the claims bar date for governmental claims, the Joyes filed

2

1  their California state tax return for the year 2000, which showed
2  them owing the FTB taxes and penalties totaling $28,178.00 ("Year
3  2000 Taxes"). See ER at 46. According to the FTB, its "records
4  indicate that there was no account information under the debtors'
5  social security numbers prior to the filing of the joint tax
6  return for the 2000 tax year." ER at 47. No payment accompanied
7  the Return. See ER at 46.
8      On March 3, 2004, the Bankruptcy Court issued the Joyes a
9  discharge of their Chapter 13 plan ("Discharge"). See ER at 95.
10      At some point following the Discharge, the FTB commenced an
11  action to collect the Year 2000 Taxes. See ER at 9.
12      On March 22, 2005, the Joyes filed an Adversary Complaint in
13  the Bankruptcy Court against the FTB. See ER at 7-11. The
14  Complaint sought: a determination that the Year 2000 Taxes were
15  discharged; an injunction enjoining the FTB from attempting to
16  collect the Year 2000 Taxes; and an award of attorney fees and
17  costs. See ER at 9-11.
18      On September 1, 2005, the FTB filed a motion for summary
19  judgment in the Bankruptcy Court ("Motion for Summary Judgment").
20  See ER at 23-24. After a hearing on the motion, the Bankruptcy
21  Court denied the FTB's motion and entered an order of summary
22  judgment in favor of the Joyes. See ER at 108-109. The FTB
23  appeal from that order.

25  **III. LEGAL STANDARD**
26      The parties agree that this appeal presents only issues of
27  law and no disputed facts.

3

1     Questions of law are reviewed de novo.  In re Bakersfield
2 Westar Ambulance, Inc., 123 F.3d 1243, 1245 (9th Cir. 1997).
3     Summary judgment is proper "if the pleadings, depositions,
4 answers to interrogatories, and admissions on file, together with
5 the affidavits, if any, show that there is no genuine issue as to
6 any material fact and that the moving party is entitled to
7 judgment as a matter of law."  F.R.C.P. 56(c).

**IV.  DISCUSSION**

FTB offers two theories for overturning the Bankruptcy Court's Ruling:  First, the Bankruptcy Court committed a reversible legal error in failing to find that the FTB's Income Tax Claim was a postpetition tax claim which, under Section 1305(a) of the Bankruptcy Code, the FTB was allowed, but not required, to claim, and thus is not barred.  See Opening Brief at 5.  Second, in the alternative, barring the FTB's Income Tax Claim constituted a denial of fundamental fairness guaranteed by the U.S. Constitution to the FTB.  See id. at 6. The Court finds that the Bankruptcy Court was technically correct as a matter of law, but that in barring the FTB's claim the Bankruptcy Court denied the FTB fundamental fairness.  On the second ground, the Court reverses the Bankruptcy Court's order.

**A.   Section 1305**

The Bankruptcy Court began the Adversary Proceeding with the following "observation for both sides" addressed to the FTB's counsel:

Mr. Whitten, all this discussion of 1305 seems of no

4

> consequence to me because 1305 is a section that has nothing to do with discharge. It has to do with whether a creditor, such as the Board, may file a claim, and if so, how that claim is treated. But that's not our case, and the question -- and 1305 essentially is a section that says under certain circumstances, a tax creditor can treat its claim as though it is pre-petition, and so the discussion about payable and when does it accrue and all this stuff in the briefs in these cases is interesting, but it has nothing to do with this case. Nothing. The question is whether Mr. Joye discharged the debt and whether you have a claim under 1305 or not has nothing to do with whether there's a discharge. So I'd have to face the issue if the Board had filed a claim in this case, but it didn't file a claim and it got notice of the proceeding, and the discharge is a final order.

ER at 129. This observation is correct.

Section 1305, titled "Filing and allowance of postpetition claims," states inter alia:

> (a) A proof of claim may be filed by an entity that holds a claim against the debtor--
> 
> > (1) for taxes that become payable to a governmental unit while the case is pending; . . .

11 U.S.C. § 1305(a)(1). Both the debtor and the FTB have spent significant time arguing about what constitutes a postpetition claim as defined by this section, or more specifically, when the FTB's claim for the Year 2000 Taxes "became payable." Though irrelevant to the issue at hand, this dispute is not surprising. "[T]estament to the lack of clarity in the Code and Rules," various courts have answered the question differently. In re Flores, 270 B.R. 203, 207 (Bankr. S.D. 2001). On one side are courts, led by the 5th Circuit, which hold that a tax becomes payable when the deadline for filing the associated return comes due. See In re Ripley, 926 F.2d 440, 444 (5th Cir. 1991). On the

5

other side are courts, led by the 10th Circuit, which hold that a tax becomes payable when the applicable period for assessment of the tax, e.g. the tax year, expires. See In re Dixon, 218 B.R. 150, 152 (10th Cir. BAP 1998). The 9th Circuit has recognized this split of authority but has chosen not to resolve it. See In re Savaria, 317 B.R. 395, 401 (9th Cir. BAP 2004).

For the record, the Court notes that the reasoning in In re Dixon and its fellows is more persuasive. As the court in In re Dixon noted, "the legislative history of the 1978 Bankruptcy Code contains the statement, 'Section 1305(a) provides for the filing of proof of claim for taxes and other obligations incurred after the filing of the chapter 13 case.'" In re Dixon, 218 B.R. at 153 (quoting S. Rep. No. 95-989, at 140 (1978) (emphasis added in In re Dixon). Thus, taxes which are incurred prepetition but "that do not come due until after the [Chapter 13] petition is filed" are properly dealt with under Section 502(i), while taxes that are "incurred postpetition . . . can be treated in a chapter 13 plan only as a postpetition claim under section 1305." Collier on Bankruptcy, 15th Ed. Rev'd ¶ 1300.71[10]; accord In re Flores, 270 B.R. at 208-209.

As the Bankruptcy Court stated, however, whether the Income Tax Claim was payable under § 1305(a)(1) before or after the Joyes filed their petition is irrelevant. Section 1305(a)(1) deals with a government entity's right to make a postpetition claim for certain taxes, and thus have those taxes provided for in the debtor's Chapter 13 plan. See Collier, supra, ¶ 1300.71[10]. The section says nothing regarding discharge.

6

Discharge is governed by Section 1328(a). See id., ¶ 1328.01. Subject to certain exceptions not applicable to the instant case, Section 1328(a) states:

> As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant debtor a discharge of all debts provided for by the plan disallowed under section 502 of this title . . .

11 U.S.C. § 1328(a)(1994)(amended 2005).[1] "[T]he phrase 'provided for' in section 1328(a) simply requires that for a claim to become dischargeable the plan must 'make a provision for' it, i.e., deal with it or refer to it." In re Gregory, 705 F.2d 1118, 1122 (9th Cir. 1983); accord Rake v. Wade, 508 U.S. 464, 473 (1993). If so provided for, a debt is discharged even if the plan contained no provision for its payment, see In re Gregory, 705 F.2d at 1122, or the creditor wasn't paid because it failed to timely file a claim for repayment. See In re Osborne, 76 F.3d 306, 310 (9th Cir. 1996); In re Dixon, 218 B.R. at 154; see, generally, 11 U.S.C. § 502(b)(9).

Furthermore, while the 2005 amendments to the code except from discharge "taxes with respect to which a return, or equivalent report or notice[,] was not filed or was filed late and within two years before the bankruptcy petition," the code prior to 2005 contained no such provision. Collier, supra, ¶ 1328.02[3][c]. "Under the law prior to 2005, taxes for which no returns were filed could be discharged under 1328(a)." Id. Thus,

---

[1] The 2005 amendments are effective in cases filed after October 17, 2005. See Pub. L. No. 109-8, § 1406 (2005).

7

1 under pre-2005 law, if the plan schedules a tax debt, that debt
2 can be discharged regardless whether the debtor ever filed a
3 return for those taxes or the taxing entity ever filed a timely
4 claim for their payment.  See In re Dixon, 218 B.R. at 154.
5     Here, the Joyes scheduled the FTB as a 100% priority debtor
6 in their Chapter 13 plan.  See ER at 87.  The Bankruptcy Court
7 confirmed the plan and set the bar date for filing governmental
8 claims for September 3, 2001.  See ER at 89.  The FTB did not file
9 a claim for this debt with the Bankruptcy Court.  See ER at 9.  On
10 March 5, 2004, the Bankruptcy Court issued an order stating that,
11 subject to certain exceptions not applicable here, "[p]ursuant to
12 11 U.S.C. § 1328(a)," the Joyes were "discharged from all debts
13 provided for by the plan or disallowed under 11 U.S.C. § 502."  ER
14 at 95.  Thus, under the law in effect at the time, the Joyes' debt
15 to the FTB was technically discharged on that date.

16    **B.   Fundamental Fairness**

17     The Court's conclusion that the Bankruptcy Court's March 5,
18 2005 order technically discharged the Joyes' debt to the FTB does
19 not, however, end the analysis.  The Court must still determine
20 whether barring the FTB from collecting the Year 2000 Tax
21 constituted an unconstitutional denial of fundamental fairness to
22 the FTB.  The Court concludes that it did.
23     As a general matter, "'actual notice is a minimum
24 constitutional precondition to a proceeding which will adversely
25 affect the liberty or property interests' of a creditor in
26 bankruptcy."  Richmond v. U.S., 172 F.3d 1099, 1103 (9th Cir.
27 1999) (quoting Tulsa Prof'l Collection Servs., Inc. v. Pope, 485

8

U.S. 478, 485 (1988)) (modifications by Richmond court omitted). Where the creditor is a government entity like the FTB, and thus is not guaranteed due process under the U.S. Constitution, it is generally said that the entity must receive notice sufficient to guarantee it "fundamental fairness" in the process by which its claim is discharged. In re Ellett, 317 B.R. 134, 139 (Bankr. E.D. Cal. 2004); see City of New York v. New York, New Haven & Hartford R.R., 344 U.S. 293, 296-97 (1953).  More specifically, such notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950); see also City of New York, 344 U.S. at 296 (indicating applicability of Mullane standard to cases involving notice to governmental agencies).  Furthermore, "[t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."  Mullane, 339 U.S. at 315;  see also Jones v. Flowers, 547 U.S. 220, 126 S. Ct. 1708, 1715 (2006).

The notice given to the FTB does not meet this standard. California's income tax system, like its federal equivalent, relies on taxpayers to assess how much they owe and inform the FTB of that amount by filing a tax return.  See Lennane v. Franchise Tax Bd., 9 Cal.4th 263, 271 n.8 (1994); see, generally, Young v. U.S., 535 U.S. 43, 48-49 (2002).  In this context, scheduling the FTB as a creditor for approximately $10,000, but failing to file their state tax return--which showed an actual debt to the FTB almost thrice that--until after the claims bar date for government

9

entities had passed is not notice "such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."  Mullane, 339 U.S. at 315.

Furthermore, this does not appear to have been a situation where the FTB could have determined the actual amount owed by the Joyes absent filing, but did not do so as a result of its own inadvertence or negligence.  Compare In re Dixon, 218 B.R. at 250. Though the reasons why are not particularly well explained, the FTB states that it did not have any record of the Joyes' social security numbers in their system prior to the FTB's receipt of the Joyes' 2000 tax return.  ER at 47.  The Joyes vaguely charge that the FTB should have had their social security numbers in its system by virtue of "employment tax withheld in 2000 . . . and the prepayment of California Income Tax on IRA distributions in 2000." Responding Brief at 16.  However, employment tax withholdings and related records are remitted to the Employment Development Department, rather than the FTB.  See Cal. Unemp. Ins. Code §§ 13020, et seq.  Thus, it appears that the FTB had only a single notice, related to taxes and penalties which were incurred because of the early distribution of an IRA, on which to base a record of the Joyes' social security numbers in their system.  This information plus notice that the Joyes had listed an estimated debt of $10,000 to the FTB in their proposed Chapter 13 plan did not provide the FTB with sufficient information to determine the amount the Joyes actually owed--$28,178.00--and pursue repayment. Thus, even assuming that in some instances it might not deny a taxing authority fundamental fairness to discharge a tax debt for

10

which no return was filed, this is not such a case.  Compare In re Dixon, 218 B.R. 150.

The Court finally notes that several of the 2005 amendments to the Code specifically seek to prevent situations such as this from occurring.[2]  Section 1308 (added for the first time in 2005) requires that prior to the first Section 341(a) meeting of creditors, "the debtor shall file with appropriate tax authorities all tax returns for all taxable periods ending during the 4-year period ending on the date of the filing of the petition."  11 U.S.C. § 1308.  And Section 523(a)(1)(B), as amended in 2005, in combination with Section 1328(a)(2), excludes from discharge "any taxes with respect to which a return, or equivalent report or notice was not filed or was filed late and within two years before the bankruptcy petition."  Colliers, supra, ¶ 1328.02[3][c].  These provisions not only confirm the Court's holding above that the FTB's Tax Claim was technically discharged under the Code in effect at the time, but also Congress's concern that operation of the Code as unamended could result in the denial of fundamental fairness to taxing authorities.

**V.   CONCLUSION**

For the foregoing reasons, the Court GRANTS Appellants' Appeal and REVERSES the Bankruptcy Court's order.  As the record permits only one resolution of the issue of the dischargeability of the FTB's Year 2000 Tax Claim, the Court declines to remand the

---

[2] As stated above, the 2005 amendments do not apply to this case.  See supra.

11

case to the Bankruptcy Court, and ENTERS an order GRANTING the FTB's motion for summary judgment. See, generally, In re Jan Weilert RV, Inc., 315 F.3d 1192, 1199 (9th Cir. 2003).

IT IS SO ORDERED.

Dated: March 23, 2007

_____
UNITED STATES DISTRICT JUDGE

12